International Franchise Assn. v City of New York (2021 NY Slip Op 02362)





International Franchise Assn. v City of New York


2021 NY Slip Op 02362


Decided on April 20, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 20, 2021

Before: Webber, J.P., Kern, Oing, González, JJ. 


Index No. 655987/18 Appeal No. 13616-13616A Case No. 2020-02013 

[*1]International Franchise Association, et al., Plaintiffs-Appellants,
v
City of New York, et al., Defendants-Respondents.


Littler Mendelson, P.C., New York (Eli Z. Freedberg of counsel), for appellants.
James E. Johnson, Corporation Counsel, New York (Ingrid R. Gustafson of counsel), for City of New York, respondent.
Gladstein, Reif & Meginniss, LLP, New York (James Reif of counsel), for Steve Vidal, Violeta Dauze, Edwin Cabrera, Shadei Gordon, Raymond Ortiz and Princess Wright, respondents.



Orders, Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about February 18, 2020, which respectively granted the motions of defendant City of New York and the intervenor-defendants to dismiss the complaint and denied plaintiffs' cross motion for summary judgment, unanimously affirmed, without costs.
The New York City Fair Workweek Law (FWWL) does not conflict with any of the State Labor Law provisions cited by plaintiffs (see Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 690 [2015]; DJL Rest. Corp. v City of New York, 96 NY2d 91, 95 [2001]). The Labor Law provisions were promulgated to protect workers and ensure their adequate and fair compensation. In particular, the State minimum wage law was enacted to protect workers, by forbidding employment "at wages insufficient to provide adequate maintenance for themselves and their families," which, when it occurs, "threatens the health and well-being of the people of this state and injures the overall economy" (Labor Law § 650). Hence, by framing the Labor Law's minimum wage provisions as guaranteeing employer rights, plaintiffs would turn the law upside down.
When viewed through this lens, all of plaintiffs' conflict arguments clearly fail. Thus, plaintiffs argue that the FWWL's "access to hours" provision — in which employers considering hiring new workers must first offer the hours the new workers would fill to existing employees (and give the hours to existing employees who take them) (see Administrative Code of City of NY § 20-1241) — potentially violates the Labor Law's prescription that workers get one full day of rest per week, and proscription against minors working more than 18 hours per week (see Labor Law §§ 142, 161). This argument fails, because the FWWL contains a savings clause expressly directing that an "employer's system for the distribution of shifts shall not violate any federal, state or local law, including laws that prohibit discrimination" (Administrative Code § 20-1241[d]).
Plaintiffs contend that the FWWL's record-keeping requirements (e.g., Administrative Code § 20-1206[a]; RCNY 7-609) conflict with Labor Law regulations detailing records to be kept by employers (see 12 NYCRR 146-2.1 to -2.3). They do not. The Labor Law's record-keeping requirements are, again, obligations imposed on the employer to promote worker protection. They are not rights conferred upon the employer that are violated if added to. The fact that a local law adds (but does not subtract) record-keeping requirements to an existing body of State record-keeping requirements creates no conflict.
Plaintiffs argue that the Labor Law and regulations preempt the fields of minimum wages and employee scheduling. Taking the latter first, plaintiffs contend that the Labor Law and regulations have created an "expansive" and "comprehensive" scheme "centraliz[ing] [the] oversight of employee scheduling, work hours, and the payment of minimum wage and premium pay." In support of this sweeping [*2]contention, plaintiffs point only to the one-day-in seven rest and meal breaks statutes (see Labor Law §§ 161-62) and laws limiting hours and otherwise protecting minor workers (see Labor Law § 130-45), as well as "call-in" and "spread of hours" regulations (see 12 NYCRR 145-1.5 to -1.6). These scattered provisions, enacted at widely varying times, and in differing circumstances, are "not so broad in scope or so detailed as to require a determination that [the Labor Law] has superseded all existing and future local regulation" on the topics (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 99 [1987]). Absent some clear expression of State intent to occupy the field, the mere fact that "the State and local laws touch upon the same area is insufficient to support a determination that the State has preempted the entire field of regulation in a given area" (id.; see New York State Club Assn. v City of New York, 69 NY2d 211, 221 [1987], affd 487 US 1 [1988]).
Turning to minimum wage, existing precedent holds that the State has preempted the field of minimum wages (see Wholesale Laundry Bd. of Trade v City of New York, 12 NY2d 998 [1963], affg for reasons stated at 17 AD2d 327 [1st Dept 1962]). The Labor Law broadly defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis" (Labor Law § 190[1]). The scheduling premiums provided for in the FWWL (see Administrative Code of City of NY § 20-1222[a]) would appear to constitute "wages" within this broad meaning (see Truelove v Northeast Capital & Advisory, 95 NY2d 220, 223-224 [2000]; Gregory v Stewart's Shops Corp., 2015 WL 893058, *7 -8, 2015 US Dist LEXIS 24412, *19 [ND NY 2015]; Pavia v Around the Clock Grocery, Inc., 2005 WL 46553 * 2, 2005 US Dist LEXIS 43229, *8 [ED NY 2005]).
Nonetheless, "[s]tate statutes do not necessarily preempt local laws having only 'tangential' impact on the State's interests" (DJL Rest., 96 NY2d 91, 97). "Local laws of general application — which are aimed at legitimate concerns of a local government — will not be preempted if their enforcement only incidentally infringes on a preempted field" (id.).
Here, the purpose of the scheduling premium is not to boost workers' wages. This is only an incidental effect. Instead, the purpose of the scheduling premium is to minimize unfair and harmful scheduling practices in the fast food industry. Any occasional payments which employers do make should be exceptional, and not the norm. And, again, the premiums are not the point of the scheduling scheme — they are merely the mechanism for incentivizing compliance by employers. Boosting of employee wages is an incident but not the purpose of the scheme.
We note that plaintiffs, who bear the burden of showing the law to be unconstitutional by proof persuasive beyond a reasonable doubt (see Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y., 46 NY2d [*3]358, 370 [1978]; Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d 524, 535 [2004]), have made no showing that scheduling premiums will be paid regularly or will otherwise have a de facto effect of raising wages in more than a tangential way. Plaintiffs have submitted no evidence as to the actual amount of premium payments made in the years since the FWWL was enacted. Instead, they note only that, through 2018, the responsible City agency had conducted over 100 investigations resulting in over $250,000 in restitution to 1,270 workers and over $69,000 in fines. Against the backdrop of an enormous fast food industry, these relatively tiny sums rather suggest that the scheduling premium's actual wage impact is de minimis.
Accordingly, we find that, although the State has preempted the field of minimum wages, neither the scheduling premiums nor any other aspect of the FWWL have anything more than a tangential effect on wages. They are thus not preempted.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 20, 2021